Gholson, J.
The first reason assigned for a new trial is the admission of evidence tending to show what is said to be a waiver, by one of the defendants, of laches in giving notice, tñe averment in the declaration, undei which the proof was offered, being of demand and notice in the usual form. Whether under such an averment, a dispensation or excuse for not giving notice, or, in a case where there has been no attempt to give notice, a subsequent waiver of any notice might be properly shown, we need not decide. The evidence offered and received, we think, tended to show that notice had actually been received, in the language of one of the authorities, that the preliminaries essential to the maintenance of the action had been satisfied. Byles on Bills, 337. In this view, the authorities clearly show that it was admissible.
It was held in the case of Campbell v. Webster, 2 M. G. & S. 258, “ that any acknowledgment by the drawer of a bill, of his liability to pay, or any promise to pay the amount, though conditional as to the mode of payment, is evidence to be left to the jury, of due notice of dishonor, and in ease of a foreign bill, of its having been duly protested.”
The evidence in this case not only showed that notice had been received, but the informality alleged to have operated as a discharge, when stated, it does not appear would have had that effect, though such was the opinion of the party. He claimed that notice should have been sent directly from New York, and not by way of Cincinnati and Lancaster, through the successive-holders of the bill. But the law clearly authorized the course which was taken. Lawson v. Farmer’s Bank *37 of Salem, 1 Ohio St. Rep. 206. And the whole statement taken together, showed that there was in fact no laches in giving notice, but that the course properly adopted for the purpose had been effectual. '
It is also urged as a reason for a new trial, that there was a misdirection to the jury, in saying that a draft drawn pay able generally, may be accepted by the drawee, payable at a particular bank in the city of his residence, and that, without a previous notice to, or the assent of, the drawer, a presentment for payment may be properly made at the counter of such bank
The precise question here presented has been recently considered in the court of appeals in New York; and it was held that such an acceptance did not discharge the drawer. “No possible injury,” says the judge who delivered the opinion, “ can result to the drawer or indorser by making a bill of exchange, directed to the drawee in a city generally, payable at some particular place in the same city. It becomes pro Jiae vice the place of business of such drawee. The cases differ as to whether the holder may not, nevertheless, present the bill for payment at the ordinary place of business, or if he has none, the residence of the drawee; but I have seen none which decides that he is bound to do so. I am confident that the practice pursued in this instance corresponds with commercial usage, and think it should be sustained.” Troy City Bank v. Lanman, 19 N. Y. Rep. 477-480. We feel the propriety of a uniformity of decisions upon commercial questions between the courts of this State and those of New York; and even if we had grave doubts of the correctness of a decision of the highest court of New York, we should be inclined to follow it, in the absence of any settled rule in this State. But upon principle, we see no good reason to doubt the correctness of that decision.
The distinction, between the contract of the drawer and payee and that of the payee and acceptor, should not be confounded. The mere drawing a bill is no contract with the acceptor. His contract has yet to be made, and, it may be admitted, should not be made so as to affect the contract between the drawer and payee evidenced by the bill. The *38 acceptance must be obtained and acted on substantially as that contract requires, or the drawer can not be charged. That contract in the present case contemplated that the acceptor should become bound generally, and not conditionally, for the amount of the bill to the payee.
It is well known that the effect on the contract of the maker of a note or acceptor of a bill, of the note or bill being made payable at a particular place, was the subject of much discussion among the judges in England, and that a difference of opinion existed. Some contended that, as against the maker or acceptor, a demand at the place was necessary, others that it was not. The controversy was settled by the house of lords in favor of the former opinion. Rowe v. Young, 2 Bro. & Bing. 164. This led to an act of parliament providing that such effect should not be given to the bill or note, unless the words “ not otherwise or elsewhere ” were added to the designation of the place of payment. The decisions of the courts in this country have been contrary to that of the house of lords, and in accordance with the opinion of the minority of the judges in the case of Rowe v. Young; and the only effect given to such designation of the place of payment in behalf of a maker or an acceptor, has been to relieve him from a ' claim for interest, if he was present at the place designated and ready to pay, but unable to do so for the want of a demand. In this view, as between payee and maker or acceptor, the designation of a place of payment has been held material.
Such being the only view in which the liability of the acceptor is qualified by designating a place of payment, it is clear that the contingency in which he might avail himself of such qualification could not affect the drawer, for it presupposes that to have occurred which in itself discharged the drawer, the failure to make a demand for the payment of the bill.
It will be observed that the rule applies to cases where the bill is addressed to a drawee in a city generally, and accepted payable at some particular place in the same city. It would not apply when the bill was accepted payable at some other city or place. This might injuriously affect the.drawer in the *39 time and mode of forwarding funds to meet the bill, and of receiving notice of dishonor. But where in the same city, a particular location or agency is designated for the coming together of the parties, to pay and receive, it is difficult to perceive how any injury therefrom can result to the drawer. In a large city, in many cases, such an arrangement would be very convenient, and we see no reason why it should not be allowed.
After what has been stated, it is scarcely necessary to say that the eases, as to the alteration of a promissory note or an accepted bill, by inserting or striking out words designating a place of payment, do not apply to this case. We have here no change of contract, but a question whether the contract of the acceptor was so made as to affect the rights of the drawer under his contract with the payee. The very distinction we have taken appears to have been suggested in one of the cases cited. Sturges & Hale v. Williams, 9 Ohio St. Rep. 443-451.
In another particular a misdirection to the jury is alleged to have occurred. The charge to the jury proceeds on the assumption that they might have found from the evidence that at the time the declarations of the partner as to receiving notiee of the dishonor of the bill were made, the partnership had ceased to exist. We think it quite doubtful whether any view of the evidence would warrant such a finding, and if not, the charge was an abstract proposition which could not prejudice the defendants. But the counsel on both sides have argued the case, as if such an assumption might properly be made, and we therefore proceed to examine the correctness of the charge, as bearing on such a view of the evidence.
The charge, as shown by the statement presented, is somewhat loosely drawn, in referring to the liability of the defendants as having become extinct by the laches of a third person. But we think the effect of the charge must be considered in connection with the issue and evidence in the case, and incorrect language, unless it may have misled the jury, ought not to be regarded. We have before stated that the declarations of the partner were properly admitted as show *40 ing that notice of the dishonor of the bill had been received. If they were properly admissible in evidence, and their effect, if believed by the jury, was to charge the defendants with liability, the language used in instructing the jury to find upon such evidence, can not be material.
The question to be really met, and it is one of some difficulty, is, whether, assuming the partnership to have been dissolved, though the fact was unknown to the plaintiffs, such declarations of one partner were properly admissible against the others ? There has been much discussion and conflict of opinion as to the authority of one partner after a dissolution of the partnership, to bind other partners by a promise or admission of liability, and particularly in reference to a debt barred by the statute of limitations. It would be difficult to deduce from the authorities any clear and definite rule which would show whether a particular declaration might be received. Partners in reference to their contracts occupy the position of other joint contractors, and are also regarded each as the agent of the others. But this agency, either before or after dissolution, must be limited to the ordinary scope of the business of the partnership. After the dissolution, the agency is limited to the winding up and adjusting the business. But persons who have had previous dealings with the partnership, and have no notice of its dissolution, may deal with the partners as if the partnership still continued. Such dealing, however, must be limited to matters within the scope of the authority of the partners to bind each other, and in the usual and ordinary course of the partnership business. If credit be given in the usual course of business on the faith of the existence of the partnership, there could be no doubt of the liability of the firm for the debt contracted. Whether the making a promise or admission to revive a debt barred by the statute of limitations, or a promise or admission of a like character, considered either as a continuance of a liability, or as a new con tract, may be regarded as a matter in the usual and ordinary course of business, is doubtful. But we are not prepared to limit the dealings of persons having no notice of dissolution of a partnership, strictly, to new contracts upon an entirely *41 new consideration. We think that partners who, after disso lution, by a failure to give notice to those with whom thej have had previous dealings, or have entered into previous en gagements, hold out each other as competent to make negotiations and arrangements in the same manner as if the partnership existed, may well be bound by declarations and admissions made by one partner, in the course of the negotiation or arrangement of a subject matter originating during the existence of the partnership. They may thus, though passively, give a right to evidence of a title to a claim or to property, which it would be unjust to permit them afterward to dispute. Nor do we think that it can be generally necessary in such cases, that the party should have parted with something, or have changed his position; it would suffice if it appeared from the circumstances that, on the faith of the declarations made, he forbore to act in the prosecution of his claim.
In this case the holders of a protested bill call on the drawers, who were partners when the bill was drawn, and after it matured, for settlement. One partner refers them to another as having charge of such business. Neither says anything of a change of authority to act or speak. The partner referred to enters into the negotiation for the settlement of the bill. He alleges that there had been a defect in giving notice of dishonor, which had discharged the drawers, but the matter relied upon, when stated, proves to be no defect, and then gives distinct and positive assurances that notwithstanding the supposed defect the matter will be settled, urging, however, continued efforts to recover the amount from the acceptors. A considerable time elapses, the acceptors are •wholly insolvent, a demand by action is made on the drawers, and the right to use such declarations as evidence of demand and notice is contested by the other partners. We do not think we are required by any rule of law, and certainly by no principle of justice, to exclude such evidence.
The ground that the verdict was against the weight of evidence, has not been pressed in the argument, and requires no *42 consideration. The motion for a new trial will be overruled; and judgment entered on the verdict.
Brinkerhoff, C.J., and Scott, Sutliff and Peck, JJ., concurred.